## DONNER *v.* PALMER—BRADLEY, Intervenor.

Upon filing a certified copy of a judgment with a County Recorder it becomes a lien upon the debtor's real property in that county for two years from the date of the filing, notwithstanding a lien by virtue of the same judgment has previously existed and expired by lapse of time in another county.

The amendment of 1862 to Sec. 193 of the Practice Act, allowing the affidavits of jurors to be received to impeach their own verdict, relates merely to the remedy and governs in all applications for new trial made after its passage, although the verdict and judgment sought to be set aside were rendered previously.

A verdict to which the assent of any of the jurors was obtained by a resort to chance will be set aside.

Appeal from the Twelfth Judicial District.

The facts are stated in the opinion of the Court.

*S. O. Houghton,* for the Plaintiff.

Sec. 207 should not be construed alone nor according to its strict letter, but must be construed together with the other provisions of the statute relating to the same subject.

Sec. 209 provides " that execution may issue at any time within five years after the entry of judgment. After that time the judgment has no vitality and has ceased to exist.

If the position of respondent is correct, and the effect of Sec. 207 is to permit the lien of a judgment to be revived in any county other than that in which it is docketed, after the lapse of more than two years from the time of the docketing thereof, it may be done at any time within five years after the entry of judgment, and a judgment lien can be created and made to continue a considerable period of time beyond the life of the judgment itself. For to accomplish that result, it would only be necessary to file the transcript in another county a few days, even one day, before the expiration of five years, and create a lien to run two years from the date of such filing, thus producing the extraordinary result of having a judgment lien where no judgment exists to be enforced. This would be utterly absurd, yet such must be the case if that section must be construed according to its very letter.

Or the transcript might be filed in another county a day before the judgment expired, and an execution issued and levied the same day, and a sale had by virtue thereof after the judgment had ceased to have any force. This would be equally absurd, and demonstrates clearly the incorrectness of the view taken of the law by our opponents.

It is a familiar rule of interpretation of statutes, that the intent of the lawmaker must be carried out, when it can be ascertained, and that intent allowed to prevail over the literal sense of the terms employed, and control the strict letter of the law, where the letter would lead to possible absurdity. Smith on stat. and constit. law, 662, Sec. 515.

This rule has been applied by this Court to Sec. 207 under consideration, in the case of *Bowman* v. *Hovious* (17 Cal. 471).

In that case effect was not given to the strict letter, for the reason that it would have led to the absurdity of reviving and extending a lien two years upon the same property, after it had been already subjected to the lien of the same judgment for one term of two years.

It was evidently the intent of the Legislature, that, where a judgment debtor had property in other counties than that in which the judgment was entered, the creditor would immediately after the entry of judgment cause a transcript thereof to be filed in such other counties, and create liens thereon. And it was evidently intended that these liens should not be continued for any great period; that the creditor should within a reasonable time subject the property of his creditor to the satisfaction of his demand, and not tie it up from other creditors. And with that object the continuance of the lien was limited to two years in the county where the judgment should be entered.

*E. A. Lawrence,* for Respondent Bradley.

The only point is, whether the taking out of the transcript of the judgment in the case of *Cobb* v. *Yontz,* in Santa Clara County, after the two years had expired, and filing it in San Francisco, created any lien upon the premises. If it did, then the charge of the Court was clearly erroneous, and intervenor is entitled to a new trial.

I find no authorities on the point. The nearest approach to an authority is *Bowman* v. *Hovious* (17 Cal.) But although this point was alluded to in the briefs of counsel, that case passed off on other grounds. In New York the lien only runs ten years from the date of docketing of the judgment in the county where rendered. (Voorhies' N. Y. Code, Sec. 282.) With us the lien runs two years from filing the transcript. (Pr. Act, Sec. 207.)

If a judgment is rendered to-day in San Francisco, it at once becomes a lien; but if a transcript is sent to San Bernardino, to be filed, it may be two months before it is filed there, and yet the lien will hold in that county two months after it has expired in this county. It does not become a lien in any other county until filed there. It is not required to be filed there forthwith, or within two years, and it is plain the statute intended to give the party the benefit of a two years' lien, wherever he might file the transcript, so that he did within the life of the judgment. If it were otherwise, the Legislature would have adopted the language of Sec. 282 of the N. Y. Code, from which our Practice Act is taken, which would have the view contended for by the learned counsel. But the Legislature, in this section, have studiously avoided reënacting the N. Y. Code.

The statute imposes no limit upon the time in which the transcript shall be filed, and the Court can impose none. The only penalty for not filing it is, that the lien will not attach until it is filed, and the law has wisely left it to the convenience and the discretion of the party to determine when he shall secure the lien.

When the lien has once attached it can only run for two years. It is not in the power of the Court or of the parties to extend it beyond that time, and for the Court to declare that the lien shall not attach, where the transcript has been filed after two years from the date of the judgment, is virtually to repeal the statute.

I do not perceive the absurdity of having a lien, after the five years' limitation has run upon a judgment. That was a mere limitation of right to bring suit upon the judgment—*non constat* that the judgment was dead. On the contrary until Sec. 214 was repealed, execution might issue after five years and during the whole time of limitation at common law, by an order of the Court.

Donner *v.* Palmer.

But that point has no bearing in this case, because the last clause of Sec. 207 is a complete answer to appellant's objection: "The lien shall continue for two years, unless the judgment be previously satisfied."

If, then, as appellant contends, the judgment is satisfied by the five years' limitation, the lien falls with it. If he files his transcript in another county four years after the date of the judgment, he has a lien for only one year. At any time within three years from date of the judgment he can have a lien for two years, "unless the judgment be previously satisfied."

Neither can this section be impaired or defeated by construing it with other sections of the statute, but gains additional plausibility from such construction.

If, as it is contended, it was the intention of the Legislature that the transcript should be filed in another county forthwith, or at any rate within two years, it would have been very natural for them to have put it into the statute. If, however, they intended to let the party who held the judgment, suit his own time and convenience for filing the same, as we contend, they would undoubtedly have used the very language of the act. The absurdity of respondent's proposition is apparent when you apply it to a Justice's judgment, which may become a lien by complying with Sec. 599 of the Practice Act. The statute prescribes no limitation of time within which to file the transcript of the Justice's judgment, and yet upon the theory of respondents, it could not be filed after two years.

At common law there was no lien. It is purely the creature of statute. (*Ackley et al.* v. *Chamberlin*, 16 Cal. 181.) And where that statute in plain and simple terms prescribes how the lien may be acquired, it would be unwise and unjust for the Court to involve it in any mysticism. A large number of titles in this State depend upon the construction for which we contend. Until the decision of Judge Campbell in this case, the searchers of titles always passed them upon the hypothesis, that filing the transcript in another county, even after the lien had expired in the first county, created a lien for two years thereafter.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of a one hundred vara lot in the City of San Francisco, the plaintiff claiming to be the owner of the entire estate. During the pendency of the action Bradley intervened, claiming, as against both plaintiff and defendant, that he was the owner of the undivided one-fourth of the lot, and entitled to the possession to that extent. The issue between plaintiff and the intervenor was submitted upon an agreed statement of facts. The issues between the plaintiff and the defendants were tried by a jury, except those relating to certain tax titles, which were submitted to the Court. The jury returned a verdict in favor of the plaintiff against the defendants and the intervenor; the Court found in favor of the plaintiff upon the questions relating to the tax titles, and on the first day of March, 1862, judgment was accordingly entered in favor of the plaintiff against the defendants and the intervenor, dismissing the complaint of the intervenor, and for the recovery of the possession of the premises and costs. On the sixth day of March, 1862, the defendants and the intervenor each served and filed notices of motions for a new trial, and on the twentieth day of December, 1861, the Court made an order denying defendants' motion, and granting the motion of the intervenor, adding, " or that the judgment be modified as to him." On the sixteenth day of January, 1863, the Court, on motion of the plaintiff's attorney, made an order setting aside and vacating the order of December 20th, and entered a new order, as of the last date, which, after reciting that the defendants' motion for a new trial was made upon a certain statement and certain affidavits describing them, and that it was opposed with certain affidavits on the part of the plaintiff, and that the intervenor had also moved for a new trial, upon a statement filed, ordered that the motion of the defendants be denied, and that of the intervenor be granted. From this judgment and these orders, the defendants appeal; and from the order granting the intervenor a new trial, the plaintiff appeals. Each of these appeals are prosecuted separately, but we have preferred to consider them together.

The claim of the intervenor is founded upon this state of facts: On the tenth day of April, 1858, Donner conveyed the undivided one-third of the premises to John Yontz; on the fifteenth day of

August, 1856, one Cobb recovered a judgment in the District
Court for Santa Clara County, for seven hundred and ninety-six
dollars, against Yontz, a transcript of which was duly recorded in
the County Recorder's office of San Francisco, on the tenth day of
December, 1858 ; an execution duly issued on said judgment on the
fifteenth day of November, 1859, directed to the Sheriff of the
County of San Francisco, which was levied on the interest of said
Yontz on the premises, and the same was sold under the same
execution on the twenty-eighth day of March, 1860, to one East-
land, and a Sheriff's deed was executed to him at the expiration of
the time of redemption, and afterwards Eastland conveyed the same
to Bradley, the intervenor.    Mary Williams instituted a suit against
said Yontz in the District Court of Santa Clara County, in which an
attachment was issued and levied upon the premises upon the eighth
day of January, 1859 ; a judgment was recovered in said action,
on which an execution was issued under which all the interest of said
Yontz in the premises was, on the ninth day of March, 1861, sold
to the plaintiff and a deed therefor made in pursuance of said sale,
after the expiration of the time for redemption.    Under this state
of facts the simple question is, which of these two parties, the inter-
venor or the plaintiff, has the better right and title to this interest
of Yontz.    The plaintiff contends that as the judgment of Cobb was
not filed in the Recorder's office of San Francisco until more than
two years after it was rendered and docketed in Santa Clara County,
and after the lien there had expired by limitation, the judgment was
no lien upon any property in San Francisco.    In this he is mis-
taken.    The lien in such cases is clearly defined by the provisions
of Sec. 207 of the Practice Act, which reads as follows : "A trans-
cript of the original docket, certified by the Clerk, may be filed
with the Recorder of any other county ; and from the time of the
filing, the judgment shall be a lien upon all the real property of the
judgment debtor, not exempt from execution, in such county, owned
by him at the time, or which he may afterwards acquire, until the
said lien expires.    The lien shall continue for two years, unless the
judgment be previously satisfied."    The statute is plain that the
lien commences at the time of the filing of the transcript in the
Recorder's office, and continues for two years from that time, unless

the judgment be satisfied before that time expires.    No language could more clearly express that to be the meaning and intention of the Legislature, and we can perceive no injustice or hardship in it. The fact that a lien under the judgment has existed and expired in another county, can make no difference.    The intention is to give a judgment creditor the right to acquire a lien in any county when and where he pleases, and then it gives him two years thereafter in which to enforce that lien.    If he fails or neglects, or can find no property in one county on which to enforce it, that is no just cause why he should not exercise his right of enforcing it in another county where he may be able to find property of the judgment debtor.

But Sec. 209 provides than an execution to enforce this lien can only issue within five years after the date of the judgment, and if the judgment creditor suffers that time to elapse without having enforced his lien, he cannot procure an execution, since the repeal of Sec. 214, with which to enforce it.    So, too, all right of action upon the judgment is barred by the seventeenth section of the Statute of Limitations, unless commenced within five years of the date of its rendition.    Whether a lien can exist in any county after the expiration of five years from the date of the judgment by filing a transcript in the Recorder's office just within the two years, is a question not properly before us in this case ; but it is clear that if a lien could exist in such case, it would be merely nominal, unless an execution is issued within the five years with which to enforce it.

It follows from these views that the interest of Yontz was vested in the intervenor, and there was therefore no error in granting him a new trial.    The order granting him such new trial is therefore affirmed.

One ground of the motion for a new trial made by the defendants was misconduct of the jury, the sole evidence of which was the affidavits of a portion of the jurors.    The respondents contend that at common law, jurors could not give evidence impeaching their own verdict, and that the amendment of Sec. 193, allowing affidavits of jurors to be used for that purpose, does not apply to this case, because it was not passed until after the rendition of the judgment. It is unnecessary to examine what the rule upon this subject may

Donner *v.* Palmer.

have been at common law, as we consider that the statute governs this case. The judgment was rendered March 1st, 1862; the law amending Sec. 193 so as to allow misconduct on the part of the jury to be proved by the affidavits or any one or more of the jurors, was passed March 5th, and took effect immediately; and the motion for a new trial was not heard and submitted until some time in August, 1862. The statute related merely to the remedy, declaring the rule of evidence to govern the Courts in hearing and determining motions for new trials, founded upon alleged misconduct of the jury, and it clearly applies to all motions for new trials heard after it took effect. In no sense can it be said to affect any vested interest plaintiff had in his judgment. If that judgment was entered upon a verdict rendered under circumstances showing misconduct on the part of the jury, the law in existence at the time of the trial, verdict, and judgment, gave the defendants a right to have the judgment vacated and a new trial granted, and the Legislature had an undoubted right to prescribe the rule of evidence in motions for that purpose, whether the judgment was rendered before or after the passage of the law. The law relates to and affects the motion for a new trial, and not the judgment.

The affidavit of one of the jurors, Day, after stating generally what occurred in the jury room, in the way of discussions and votes, states that after a time a vote unanimous for the plaintiff was taken, but immediately thereafter Heller and Fortune, who are charged with the misconduct, recanted, and said their vote was not according to their convictions; and soon after the affiant saw Fortune approach Heller, and heard him propose to the latter that he would place a piece of money, and the latter should guess, heads or tails, and if he guessed right then their verdict should be for the plaintiff, or they would go with the others for the plaintiff; that Heller assented; that Fortune then placed a piece of money and covered it so that the former could not see it; he guessed, and they announced that he had guessed right, and they thereupon agreed to a verdict for the plaintiff, but both said it was still contrary to their convictions. The affidavit of Calkin, another juror, is substantially to the same effect. The plaintiff introduced the affidavits of several other jurors, in rebuttal, who corroborate the general

statements of the occurrences in the jury room, but they state that they heard or saw nothing of this particular transaction between Fortune and Heller. The circumstances detailed by Day and Calkin show that it might well have occurred, and the other jurors have neither seen nor heard it, and we think the affidavits show with sufficient certainty that the transaction occurred substantially as stated by Day and Calkin. It is insisted, however, that the defendants should have procured the affidavits of the jurors guilty of the misconduct. It seems that one of the defendants applied to them for that purpose, and they refused. We know of no rule of law which requires these facts to be proved by the affidavits of the jurors charged with the misconduct.

That the conduct of these jurors was such as to vitiate the verdict there can be no doubt. The rule of law upon this subject is well settled. (1 Graham & Waterman on New Trials, 103; *Wilson* v. *Berryman*, 5 Cal. 44.) The Court therefore erred in denying the defendants' motion for a new trial. Several other questions are raised by the parties, but as they do not relate to the merits of the case, and as their determination is not important to guide the future action of the Court below on the new trial, we do not deem it necessary to pass upon them.

The judgment, is reversed and a new trial ordered as to the defendants and the intervenor.