[L.A. No. 29868. In Bank. June 17, 1971.]

MABLE WEATHERS et al., Plaintiffs and Respondents, v. KAISER FOUNDATION HOSPITALS et al., Defendants and Appellants.

■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Thelen, Marrin, Johnson & Bridges, James M. Radnich and Andrew J. Nocas for Defendants and Appellants.

Hirsch & Susman, Alvin Hirsch and Alvin Wechsler for Plaintiffs and Respondents.

**OPINION**

**SULLIVAN, J.**—Defendants Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., and Southern California Permanente Medical Group appeal from an order granting plaintiffs' motion for a new trial on the grounds of irregularities in the proceedings of the jury and jury misconduct.

Mable Weathers, Fulton L. Weathers, Jr., and Demetree Wheatley, the widow and two children respectively of Fulton L. Weathers, brought this action for damages for his wrongful death, allegedly caused by the medical malpractice of defendants. After a trial lasting over a month and a half, the jury by a vote of nine to three returned a verdict in favor of defendants.

Plaintiffs moved for a new trial on the grounds, inter alia,[1] of irregularities in the proceedings of the jury and misconduct of the jury. (Code Civ. Proc., § 657, subds. 1 and 2.) In support of their motion, they filed declarations by the three dissenting jurors, which contained allegations that several members of the jury had concealed their bias on *voir dire,* that one juror had called his personal doctor to obtain a medical opinion, that the jury foreman had stifled free discussion, and that numerous other acts of misconduct had occurred. Plaintiffs also filed a declaration by one of their two attorneys stating that neither he, nor his co-counsel, nor plaintiffs had been aware of the misconduct prior to the rendition of the verdict. Defendants submitted counterdeclarations by six of the nine majority jurors. The trial court granted plaintiffs' motion. This appeal followed.

■■■ Defendants launch two attacks on the order, each challenging the

---

[1]The other grounds were abandoned on appeal and are not before us.

sufficiency of plaintiffs' declarations. First, defendants contend that the motion for a new trial was fatally defective because it was not supported by separate declarations by plaintiffs themselves as well as by their counsel, indicating their respective lack of knowledge of the alleged jury irregularities prior to rendition of the verdict.

On this point, the record discloses that the declaration of Alvin Hirsch, one of plaintiffs' attorneys, states: "I have read the declarations [of the dissenting jurors] heretofore filed herein in support of plaintiffs' Motion for a New Trial, and do hereby state under oath that *none of the plaintiffs, Alvin Wechsler, co-counsel for the plaintiffs, or I* had any knowledge whatsoever prior to the rendition of the verdict in the above entitled cause of any of the . . . facts stated in said declarations. . . ." (Italics added.) Defendants argue, however, that insofar as Hirsch's declaration purports to indicate the knowledge of his co-counsel and of the three plaintiffs, it is hearsay and inadmissible. Since separate declarations by plaintiffs and attorney Wechsler were not filed, defendants claim that the trial court erred in granting the motion for a new trial.

■ The requirement that a litigant seeking a new trial on the ground of juror improprieties present affidavits showing that neither he nor his attorney was aware of the misbehavior until after the verdict was returned is firmly established and long approved in this state. (*Lindemann* v. *San Joaquin Cotton Oil Co.* (1936) 5 Cal.2d 480, 496 [55 P.2d 870]; *Sherwin* v. *Southern Pacific Co.* (1914) 168 Cal. 722, 726 [145 P. 92]; *Forman* v. *Alexander's Markets* (1956) 138 Cal.App.2d 671, 674-676 [292 P.2d 257].) Its purpose is to prevent a party who, personally or through counsel, has discovered some jury misconduct during the course of the proceedings from gambling on the outcome of the jury's deliberations while secretly preserving the error to be raised on a motion for a new trial in the event of an unfavorable verdict. ■ The rule is well settled that when at any time during trial a party or his counsel becomes aware of facts constituting misconduct or irregularity in the proceedings of the jury, he must promptly bring such matters to the attention of the court, if he desires to object to it, or he will be deemed to have waived the point as a ground for a motion for a new trial. (*Sherwin* v. *Southern Pacific Co., supra,* 168 Cal. 722, 726; *Markaway* v. *Keesling* (1963) 211 Cal.App.2d 607, 611 [27 Cal.Rptr. 583]; *Gray* v. *Robinson* (1939) 33 Cal.App.2d 177, 183 [91 P.2d 194].) ■ Consequently, the "no knowledge" affidavit or declaration serves to establish that a party moving for a new trial is not relying on errors which were known to him or his attorney prior to the jury's verdict.

Before inquiring into the sufficiency of Hirsch's declaration, we consider

briefly the scope of the above rule as to lack of prior knowledge. Most of the reported decisions dealing with this requirement have involved misconduct of the jury arising from the concealment of bias on *voir dire*. This is understandable since until recently such concealment was one of the few grounds for impeaching the verdict. (*People* v. *Castaldia* (1959) 51 Cal.2d 569, 572 [335 P.2d 104]; see 2 Witkin, Cal. Procedure (1967 Supp.) Trial, § 99.) However, in *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], we held that "jurors are competent witnesses to prove objective facts to impeach a verdict under section 1150 of the Evidence Code." (*Id.* at p. 351.)[2] In the case at bar, a number of the instances of asserted misconduct take the form of statements or other acts by the jurors which allegedly affected the verdict. Thus we are faced with the question whether the rule requiring an affidavit of no prior knowledge applies to this kind of jury misconduct.

We think that it does. The rationale for the requirement—to prevent a party from withholding his knowledge of jury improprieties until after an unfavorable verdict—is fully as applicable to the overt acts discussed in *Hutchinson* as to the concealment of bias on *voir dire*. No reason appears to allow a litigant to seek a new trial on the basis of irregularities which, if raised when first discovered, might have been cured.

Furthermore, the same acts of misconduct may frequently be cited both as evidence of concealment of bias and as an objective fact likely to have improperly influenced the jury's verdict. In the instant case, for example, the order granting the new trial lists one juror's comment about "how good Kaiser Hospital was" and that "we can't find them guilty in this case because if we do, we would be attacking it and endangering the whole hospital system" both as an irregularity in the proceedings of the jury and as evidence of concealment of bias. It is inconsistent to apply the rule in one context but not in the other.

With this in mind, we take up defendants' claim that the motion for a new trial was defective because plaintiffs failed to present separate declarations by themselves and by their counsel attesting to lack of prior knowledge of any jury misconduct. We recognize that the literal language of one case appears to impose such a requirement. In *Dunford* v. *General Water*

---

[2]Section 1150, subdivision (a), provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

*Heater Corp.* (1957) 150 Cal.App.2d 260 [309 P.2d 958], the court stated, "It is essential, not only that there be affidavits showing that plaintiffs' counsel were ignorant of the facts constituting the claimed misconduct . . . but also that plaintiffs file an affidavit to the same effect. . . ." (*Id.* at p. 265.)

However, *Dunford* and other decisions in which a motion for a new trial was denied for lack of sufficient "no knowledge" affidavits involved factual situations where the required affidavit was not filed at all—by either the moving party or his attorney—(see, e.g., *Forman* v. *Alexander's Markets, supra,* 138 Cal.App.2d 671, 674-675) or cases where the affidavit submitted by the attorney met the requirement as to *his* knowledge but was silent as to his *client's* knowledge. (See, e.g., *Dunford* v. *General Water Heater Corp., supra,* 150 Cal.App.2d 260, 265.) Thus, in those cases, the court considering the motion for a new trial had no assurance that both counsel and client were previously ignorant of the claimed irregularities.

By contrast, most other decisions in this area declare simply that "the affidavits of the moving party must *show affirmatively* that both he and his counsel were ignorant of the facts constituting the misconduct or irregularity charged. . . ." (*Sherwin* v. *Southern Pacific Co., supra,* 168 Cal. 722, 726.) (Italics added.) (See also *Markaway* v. *Keesling, supra,* 211 Cal.App.2d 607, 612; *Newman* v. *Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 694 [262 P.2d 95]; *Gray* v. *Robinson, supra,* 33 Cal. App.2d 177, 183.) ▮ We think that the declaration submitted by attorney Hirsch substantially complies with this language and with the rationale of the "no knowledge" rule. In his declaration Hirsch states unequivocally that both the plaintiffs and their attorneys lacked prior knowledge of the jury misconduct raised in the motion for a new trial. We conclude that while the filing of separate affidavits by counsel and client is undoubtedly far preferable, the failure of plaintiffs to do so here was not a fatal error.

▮ Defendants further argue that Mr. Hirsch is incompetent to testify as to whether his co-counsel or plaintiffs knew of the alleged acts of jury misconduct, and that his declaration to that effect is hearsay and inadmissible. ▮ We recognize, as we have in the past, that evidence presented by affidavit in connection with a motion for new trial, like oral testimony at trial, must be given from personal knowledge and cannot contain hearsay. (*Gay* v. *Torrance* (1904) 145 Cal. 144, 152 [78 P. 540].) ▮ However, contrary to defendants' contention, this does not mean that the Hirsch declaration is necessarily hearsay insofar as it refers to the state of mind of his clients and co-counsel.

Section 1200, subdivision (a), of the Evidence Code defines hearsay as

"evidence of a *statement* that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Italics added.) The declaration of Alvin Hirsch that "none of the plaintiffs [nor] Alvin Wechsler, co-counsel for the plaintiffs . . . had any knowledge . . . of any of the . . . facts stated" contains no "statement" either by plaintiffs or Wechsler. Although it is possible that this portion of Hirsch's declaration was based on their statements to him, it is equally conceivable that Hirsch had been in the presence of the plaintiffs and attorney Wechsler throughout the jury's deliberations and could testify from his own knowledge that the others remained ignorant of the misconduct claimed to be occurring in the jury room. ■ "It is the general rule that statements in affidavits are presumed to be made on personal knowledge unless stated to be on information and belief and unless it appears affirmatively or by fair inference that they could not have been, and were not, on such knowledge. . . ." (Civil Procedure Before Trial (Cont. Ed. Bar) p. 588.)

■ Upon appellate review of an order granting a new trial, "all intendments are in favor of the action taken by the lower court [and] the affidavits in behalf of the prevailing party are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated." (*Brickell* v. *Wittmar* (1959) 175 Cal.App.2d 190, 195-196 [345 P.2d 494].) ■ Since the trial court did not grant defendants' motion to strike the reference to plaintiffs and Wechsler from Hirsch's affidavit, it impliedly determined that the testimony was not hearsay. We cannot say that this conclusion was erroneous. Consequently, we reject defendants' contention that the Hirsch declaration was insufficient to meet the requirements of the "no knowledge" rule.

■ In their second attack, defendants assert that the new trial order is legally defective because it is based on the declarations of the three dissenting jurors, which, defendants claim, consist entirely of "self-serving hearsay."

Before we consider this contention, it is necessary to set forth the contents of the order. Under "Irregularity in the Proceedings of the Jury," the trial court lists the following incidents.[3] Juror Anderson telephoned

---

[3]Each specification is accompanied by a reference to the page and line of the particular declaration from which it was drawn. Our examination of the declarations themselves confirms that the specifications in the new trial order were taken directly from the declarations of the three dissenting jurors. Under the circumstances, it is unnecessary for us to set forth the declarations.

In detailing the new trial order, we have followed the trial court's format of using double quotation marks to indicate when the court is quoting from the declarations

his own physician and obtained his opinion, which was communicated to the other jurors, that viral encephalitis "was an incurable and fatal disease, and that the decedent . . . was doomed from the beginning so, what were we doing here, and why didn't we get this thing over with." Juror Carruthers led a movement to impeach the previously chosen foreman and successfully campaigned to have himself elected as foreman. After his election, he shut off discussion. Carruthers also "brought up that the plaintiff was a 'black woman' " and stated that "where he came from, they don't 'even let a black woman into the courtroom.' " Juror Mallinson told the jury that "if we voted for the plaintiffs in this case the hospital rates at Kaiser Hospital would go up, and we would all have to pay more money for hospital rates." In addition, she "constantly told everyone on the jury how good Kaiser Hospital was" and that "we can't find them guilty in this case because if we do, we would be attacking it and endangering the whole hospital system." Juror Bonsell "told the other members of the jury that he had a brother whose two children had been born at Kaiser Hospital, and that Kaiser Hospital was a good hospital."

The order specifies the following items as "Misconduct of the Jury." Several jury members discussed the case with non-jurors. Juror Anderson spoke to his own doctor. Foreman Carruthers apparently talked with alternate juror Bryant because Carruthers remarked during the jury's deliberations that he was sorry Bryant was not a regular member of the panel since Bryant had told him that Mable Weathers didn't have a leg to stand on and that showed how one of her race felt about the case. Juror Bonsell said that his brother's two children were born at Kaiser Hospital and it was a good hospital.

Finally, the order declares, "there rather clearly appears to have been concealment by certain jurors during *voir dire* examination of a state of mind which would prevent them from acting impartially." Juror Meckler stated "she had a close relative on the staff of the Kaiser Hospital in Fontana, but on *voir dire* examination by the attorney she had not mentioned it because she had forgotten about it at the time." Foreman Carruthers approached juror Billick in the jury parking lot and told her "that he wanted to talk to me; that we've got to get things straightened out. I took it as a joke and indicated that I did not wish to discuss the case with him. He said: 'No, I'm serious. We've got to get this thing straightened out. I want to sit in your car with you and discuss this.' " Juror Mallinson "repeatedly told all of the members of the jury that Kaiser Hospital was

---

of the dissenting jurors. Single quotation marks inside double quotation marks signify that the material is a direct quotation of one of the *majority* jurors, contained within a declaration of a *dissenting* juror.

such a good hospital; that if it were not for Kaiser Hospital, her mother would not have been alive today, and that, furthermore, the group at Kaiser Hospital was a good group, and that you couldn't condemn them for this one act that they did in this case." The previously quoted remarks of jurors Mallinson, Carruthers and Bonsell were also cited as evidence of bias.

We proceed now to the counterdeclarations, submitted by six of the nine majority jurors. Juror Mallinson flatly denied making any of the statements attributed to her and declared that her mother had never been a patient at Kaiser. Juror Meckler stated that she had no close relatives on the Kaiser Hospital staff. Jurors Carruthers and Bonsell each stated: "I did not participate in, nor am I aware of, any discussion by jurors about the merits of the case during lunch, or prior to being instructed by the Judge to deliberate, or outside the jury room." Each of the declarants stated that he did not "recall" any statements by juror Anderson concerning his discussion with his physician; no declaration was submitted by Anderson. The declarations stated generally that all jurors were allowed ample opportunity to express their opinions; that juror Carruthers did not campaign for the position of foreman; and that references to the plaintiffs' race were few and "not disparaging or critical." However, foreman Carruthers did not deny making the racial statements attributed to him.

As the foregoing summary makes clear, the counterdeclarations flatly contradicted some of the allegations made in the dissenting jurors' declarations, were silent as to others, and were evasive as to still others. Of course, the fact that the two sets of declarations were directly at odds on some points does not support defendants' contention that the new trial order was unsupported by the record. ■ "When an issue is tried on affidavits . . . and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636]; *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476]; *Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1, 16 [87 Cal.Rptr. 108].)

■ Furthermore, we reject the contention that the trial court should have disbelieved the declarations of the three dissenting jurors on the ground that they were "self-serving." Although it could be said that the dissenting jurors had an interest in overturning a verdict which they had opposed, we do not think that they would be more likely to make false statements about the alleged jury misconduct than the majority jurors, who had a similar interest in preserving the verdict for which they had voted. Indeed, if the majority jurors were guilty of the misbehavior charged,

they would have a greater motivation to lie, because of the onus of wrong-doing and the penalties attached thereto.[4]

Finally, we cannot accept defendants' assertion that the order granting a new trial was defective because evidence of the alleged improprieties did not come from the wrongdoers themselves. ▇▇▇ Aside from the difficulty of obtaining a "confession" from a juror who has misbehaved, this court declared over a hundred years ago: "We know of no rule of law which requires these facts [that two jurors had flipped a coin to determine how to vote] to be proved by the affidavits of the jurors charged with the misconduct." (*Donner* v. *Palmer* (1863) 23 Cal. 40, 48.)

▇▇▇ At any rate, "it is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. [Citations.]" (*Mazzotta* v. *Los Angeles Ry. Corp.* (1944) 25 Cal.2d 165, 169 [153 P.2d 338].) ▇▇▇ It is this discretion which we uphold here. Contrary to defendants' contention, our decision today does not mean that the allegations of a single dissenting juror must automatically be believed and permitted to overturn a verdict returned by the remaining 11 jurors. As we have previously indicated, weighing the credibility of conflicting declarations on a motion for new trial is uniquely within the province of the trial court. All that we hold is that in the instant case, the court did not abuse its discretion in basing its findings on the declarations of the three dissenting jurors.

We therefore turn to the question whether those declarations contained competent evidence. Defendants contend that the dissenters' statements consist entirely of hearsay and consequently should not have been considered by the trial court in ruling on plaintiffs' motion for a new trial.

▇▇▇ As noted above, hearsay is defined as "evidence of a statement that was made other than by a witness while testifying at the hearing and *that is offered to prove the truth of the matter stated.*" (Evid. Code, § 1200, subd. (a).) (Italics added.) However "[t]here is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said . . . and not . . . whether these things were true or false, and in these cases the words . . . are admissible not as hearsay, but as original evidence." (*People* v. *Henry*

---

[4]Section 1209, subdivision 10, of the Code of Civil Procedure provides that the following conduct is contempt of court: "When summoned as a juror in a court . . . improperly conversing . . . with any other person, in relation to the merits of such action, or receiving a communication from a party or other person in respect to it, without immediately disclosing the same to the court."

(1948) 86 Cal.App.2d 785, 789 [195 P.2d 478].) (See *Los Robles Motor Lodge, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 246 Cal.App.2d 198, 205 [54 Cal.Rptr. 547]; Witkin, Cal. Evidence (2d ed. 1966) § 463, p. 425.)

██   Although some of the specifications in the order granting a new trial were indeed based on hearsay evidence, others were entirely competent because, although they rested on out-of-court statements, they were not offered to prove the truth of the matter stated. For example, foreman Carruthers declared that the plaintiff was a "black woman" and that "where he came from, they don't 'even let a black woman into the courtroom.' " Similarly juror Mallinson made repeated comments about "how good Kaiser Hospital was" and that a verdict for plaintiffs would be "endangering the whole hospital system." These statements were not offered to show that Negroes *are* excluded from courtrooms or that Kaiser *is* a good hospital; rather they are evidence of the bias of the speakers. Consequently, they are not hearsay.

While there is no way of knowing precisely how much weight the trial court accorded these particular statements in granting the motion for a new trial, we have no hesitancy in saying that they amply support the new trial order, regardless of the possible inadmissibility of other portions of the affidavits. The comments of these two jurors provide substantial evidence of their prejudice against the plaintiffs and in favor of defendants —bias which the trial court might reasonably have inferred was intentionally concealed on *voir dire*.[5] (See *Shipley* v. *Permanente Hospital* (1954) 127 Cal.App.2d 417, 424-425 [274 P.2d 53, 48 A.L.R.2d 964], disapproved on other grounds in *Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 773 [329 P.2d 897], which was overruled on other grounds in *People* v. *Hutchinson, supra,* 71 Cal.2d 342.)

██   "The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution." (*People* v. *Galloway* (1927) 202 Cal. 81, 92 [259 P. 332]; *Lombardi* v. *California St. Ry. Co.* (1899) 124 Cal. 311, 317 [57 P. 66].) ██   Since the verdict was nine to three, the disqualification for bias of any one of the majority jurors could have resulted in a different verdict. Under the circumstances, the order granting the new trial is sufficiently supported by competent evidence.

Although we uphold the order on the sole basis of concealment of

---

[5]We need not decide whether *unintentional* concealment of bias on *voir dire* constitutes jury misconduct. (See *Shipley* v. *Permanente Hospital, supra,* 127 Cal.App.2d 417, 423-424.) It is apparent from the instant new trial order that the court concluded that the concealment was intentional.

juror bias on *voir dire,* we note that the trial court specified additional overt acts of jurors which may constitute jury irregularity and misconduct under section 1150 of the Evidence Code and our holding in *People* v. *Hutchinson, supra,* 71 Cal.2d 342. In so doing, the court seems to have erroneously rested some specifications on hearsay evidence. The record does not disclose what weight it gave to such hearsay items. Unlike concealment of bias as jury misconduct, where the impropriety of a single juror may be sufficient to destroy the integrity of the verdict, the overt acts falling within Evidence Code section 1150 may have been relied upon by the court only in their totality as establishing an entire pattern of misconduct. In view of this possibility, we cannot rest our decision also on this basis, since it would first be necessary for the trial judge to reassess those overt acts of the jury not established by hearsay. We need not remand the cause for such a reevaluation, however, since as we have explained, jury misconduct and irregularity in the jury's proceedings[6] are amply established by competent and material evidence indicating concealment of bias.

The order appealed from is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[6]Although these are distinct statutory grounds, in instances, as here, there is an obvious overlapping. (See 3 Witkin, Cal. Procedure (1954) Attack on Judgment in Trial Court, § 11, pp. 2055-2056; *Gray* v. *Robinson, supra,* 33 Cal.App.2d 177, 182.)