Filed 2/23/26  Uzun v. City of Santa Monica CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT
### DIVISION FIVE

| | |
|---|---|
| GUVEN UZUN, | B339573 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23SMCV00234) |
| v. | |
| CITY OF SANTA MONICA et al., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendants and Respondents. | |
| | [NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed on February 5, 2026, be modified as follows:

On page 1, fourth line from the bottom, add "and Guven Uzun, in pro. per.," after "Albert J. Garcia" and before "for Plaintiff and Appellant."

The petition for rehearing filed on February 17, 2026, by plaintiff and appellant is denied.

There is no change in judgment.

_____

HOFFSTADT, P. J.      MOOR, J.            KUMAR, J.\*

_____

\* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/5/26  Uzun v. City of Santa Monica CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GUVEN UZUN, | B339573 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23SMCV00234) |
| v. | |
| CITY OF SANTA MONICA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Albert J. Garcia for Plaintiff and Appellant.

Manning & Kass Ellrod, Ramirez, Trester, Yury A. Kolesnikov, Eugene P. Ramirez and Geoffrey R. Plowden for Defendants and Respondents.

_____

Plaintiff and appellant Guven Uzun appeals from a judgment following a jury trial in favor of the City of Santa Monica and police officers Ryan King and Arsenio Valenzuela in this negligence action arising out of the use of handcuffs during Uzun's arrest. In the trial court, Uzun conceded that it was not feasible to double-lock the handcuffs when they were initially placed on his wrists, but he asserted a reasonably careful person would have double-locked the handcuffs before placing Uzun in the patrol car. On appeal, Uzun contends: (1) the trial court abused its discretion in its evidentiary rulings; (2) there is no substantial evidence to support the jury's finding that the officers were not negligent; and (3) his motion for new trial should have been granted.

We conclude the trial court did not abuse its discretion by admitting evidence that the officers were responding to a domestic violence report or by excluding evidence of the outcome of the criminal matter against Uzun. Because the jury never reached the issue of causation, Uzun has not shown the exclusion of evidence relevant to causation resulted in any prejudice. In addition, we conclude substantial evidence supports the jury's verdict that the arresting officers were not negligent. The motion for a new trial was properly denied. Therefore, we affirm.

**FACTS**

Handcuffs can be "double-locked" so that the cuffs do not accidentally collapse further around the wrist. Santa Monica Police Department Policy 302, subsection 302.4, provides: "When feasible, handcuffs shall be double-locked to prevent tightening,

2

which may cause undue discomfort or injury to the hands or wrists."

On June 7, 2019, Valenzuela, who had served as a police officer for six years, responded to a radio call for service at Santa Monica Emergency Hospital. At the hospital, he spoke with Uzun's wife and one of Uzun's daughters. Valenzuela called for a supervisor and an additional unit. King, who was performing field training required to become a police officer, responded with his training officer, Evan Raleigh. At that time, King had been on the job for four months. Sergeant Michael Chun and Sergeant Lewis Gilmour came to the hospital as well.

Valenzuela explained the report of domestic violence. Police officers are trained that a domestic violence call presents one of the most serious officer safety situations, comparable to armed robbery. Officer safety issues can arise rapidly, even out of calm situations.

The officers drove to Uzun's home around 2:00 a.m. to arrest him. Uzun's wife and daughter waited in a parked car on the street until they could return to the house. Uzun's wife did not know of any weapons at the house, but Valenzuela could not be certain that there were no weapons. Overgrown vegetation made the entryway to the house dark. A planter restricted the area where the officers could stand, requiring Valenzuela to stand in front of the door. The officers knocked on the door and announced that they were police officers. A dog was barking. Uzun spoke with the officers through the door, but did not open the door at first, which concerned Valenzuela.

After Uzun opened the door, he stood in the open doorway to talk to the officers. He was not being aggressive, but at one point he sought to move back inside the house. The interior

immediately behind Uzun was very dark.  Uzun asked someone inside the house to join them.  The officers did not know who else was in the house.  Concerned about officer safety, Valenzuela wanted to secure Uzun, preferably in a vehicle.

Valenzuela asked Uzun to step outside to be patted down for weapons.  Rather than forecast an intent to arrest a person, which may trigger flight or an assault, it is safer for officers to say they are going to take a different action that will put the person in a position to accomplish the arrest.  Valenzuela did not pat down Uzun for weapons.  Instead, when Uzun stepped outside, Valenzuela took Uzun's wrist.  Valenzuela felt Uzun try to step back into the house, so Valenzuela said that he needed to step outside.  Valenzuela told him to place his arms and hands behind him.  When Valenzuela had control of Uzun's hands, without telling Uzun what he was doing, Valenzuela reached for his handcuffs and began to place them on Uzun.  Uzun was compliant initially, but Valenzuela felt him pulling his hand away and jerking his body to the left.  King stepped forward to take control of Uzun's arms.  At various times during the encounter, Uzun called back into the house for an unknown person to come out for one second.

To double-lock the handcuffs, Valenzuela would have needed to pull out his handcuff key from the key holder on his belt, have another officer illuminate the area to see the handcuffs, and for each side, insert the small portion of the key into a tiny hole on the handcuffs and click it down to lock the arm in place.  Valenzuela did not double-lock the handcuffs initially due to Uzun's movement when Valenzuela attempted to place the handcuffs on him.  Then he placed one hand on Uzun to calm him.  Valenzuela was concerned the person inside the house

4

might come out to assault the officers and attempt to free Uzun. Under the circumstances, because of the safety risks to the officers and others at the scene, Valenzuela did not consider it feasible to double-lock the handcuffs at that moment.

Raleigh instructed the officers to move Uzun to the patrol car. King escorted Uzun to the sidewalk in front of the home, while Valenzuela went to get the car. Uzun did not resist.

From the time that King led Uzun away from the doorway, King's role was to ensure Uzun got to the car. There were still a number of safety issues to consider. King had the impression from Uzun's behavior at the doorway that he was trying to get away from the officers, which caused King to be very alert to Uzun's intent from his body language. King was also aware that the victims in the case were waiting somewhere outside the house. Visibility was limited because it was dark, with light provided by streetlights and moonlight.

King was required to perform a search incident to the arrest to secure any of Uzun's personal belongings before he was placed in the patrol car. Uzun did not provide any resistance on the sidewalk, but King considered him to be uncooperative. Uzun was asking for his daughter to come along to the jail with him. When King performed the search, he could have checked whether the handcuffs were double-locked, but he was under the impression they were already double-locked and did not know they were not. The police department does not have any policy requiring an officer who is performing a search incident to arrest to check whether the handcuffs are double-locked, and there is no policy requiring handcuffs to be double-locked before transporting an arrestee.

Valenzuela instructed the family members sitting in the car on the street to wait, so they would not try to intervene and potentially endanger the officers. After pulling up in the patrol car, Valenzuela illuminated the back seat so that King could place Uzun in the car. King checked the back seat to make sure nothing had been left behind from a prior occupant.

As soon as Uzun sat in the patrol car, he felt a shooting pain in his thumb and index finger. He screamed out from the pain and cried, "my radial nerve!" He knew from his specialty as a neurologist that the injury was the result of pressure on the radial nerve.

Valenzuela heard Uzun cry out. When an arrestee complains of pain or injury from a handcuff, officers are trained to promptly check the restraint and address the issue so there is no further complaints or injury. Within 15 seconds of hearing Uzun cry out, King took him out of the patrol car, observed there was some space between the right handcuff and the wrist but adjusted and loosened the handcuffs anyway, and double-locked them.

Gilmour, who was standing by throughout the arrest, testified in deposition that it may have been that it was feasible to double-lock the handcuffs prior to first placing Uzun in the patrol car, but he was not aware that the handcuffs were not double-locked until Uzun complained of pain. Between five and seven minutes elapsed from the time Uzun was initially handcuffed to the time he was first placed in the patrol car.

As they drove to the jail, King asked if Uzun's wrists were okay and Uzun said they were. King saw the handcuffs taken off at the jail and did not observe any redness or indentations on Uzun's wrists. Although King's adjustment of the handcuffs had

6

eased the pain, Uzun continued to experience intermittent pain and sought treatment after his release from jail.

## PROCEDURAL BACKGROUND

Uzun filed an action in federal court. (*Uzun v. City of Santa Monica* (9th Cir. 2022) 54 F.4th 595, 596.) The federal court granted summary adjudication of Uzun's claims in that case, with the exception of his state law negligence claim, because there was no evidence from which a trier of fact could conclude the officers used excessive force. (*Id.* at pp. 596–597.) On January 17, 2023, Uzun re-filed his negligence claim in the instant state court action against the City, Valenzuela, King, Raleigh, Gilmour, and Chun. The trial court granted summary adjudication of Uzun's claims against Raleigh, Gilmour, and Chun. The case proceeded to trial against the remaining defendants.

The City filed a motion in limine to exclude evidence that the charges in the criminal case based on the alleged domestic violence were dismissed after Uzun entered a diversion program. The City argued the outcome of the criminal prosecution was irrelevant to whether the officers were negligent at the time of the arrest. In addition, the City would be unduly prejudiced by evidence of the dismissal because the jury would assume there was no truth to the crime report or no amount of force was appropriate, but the propriety of the use of handcuffs did not depend on the outcome of the charges. The evidence would also consume undue time and confuse the jury about the issues.

At the final status conference on March 4, 2024, Uzun argued that evidence of his bipolar diagnosis, which enabled him

7

to enter the diversion program in the criminal matter, should be excluded because the criminal records had been sealed. The trial court noted that it would be extremely misleading to allow evidence that Uzun was not convicted in the criminal case, but exclude evidence that Uzun was not convicted because he was placed in the diversion program on the grounds of his bipolar disorder, lack of criminal history, and other factors.

Uzun made an oral motion in limine to exclude evidence of domestic violence as the reason for the arrest. The trial court found an assessment of whether the officers acted reasonably at the time of the arrest included the allegations of domestic violence that the officers knew at the time. The trial court denied the motion, finding the evidence relevant and not unduly or unfairly prejudicial. The trial court agreed to give a limiting instruction to the jury.

The trial court granted the City's motion to exclude evidence about the outcome of the criminal case against Uzun because it was not relevant to the amount of reasonable force that an officer in their position at the time would have used, and any relevancy was outweighed by the danger of undue prejudice.

Uzun agreed to release Chun from a subpoena to appear at trial. Subsequently, Chun scheduled a medical appointment that made him unavailable for the trial dates.

A jury trial began on March 6, 2024. Uzun sought to read a portion of Chun's deposition, in which Chun was asked if he heard Uzun scream in pain when he sat in the patrol car. Chun answered, "Yes, when he was placed in the car, I heard there was a click, which I recognized to be the sound of handcuffs ratcheting a bit tighter and then he voiced that he was in pain and then at that point the officers addressed that. Removed him from the car

8

and then refitted the [handcuffs] so they were more appropriately fit to not cause injury." The City objected that Chun was no longer a party and the City had no opportunity to examine him at the time of his deposition. On March 7, 2024, the trial court ruled that Chun's deposition testimony was not admissible under any hearsay exception. Chun was no longer a party, his deposition testimony was not an authorized statement, and the liability of the remaining officers did not depend on Chun's liability.

That same day, the trial court excluded expert testimony from Dr. Rosabel Young on the issue of causation. Young had originally opined that Uzun's nerve injury was caused by the officers' actions during the arrest in the doorway of the home, and Uzun had represented to the defendants prior to trial that Young had no new opinions, but the officers' use of force during the arrest was resolved by the federal court case. The court concluded Young could not fairly revise her opinion at this stage to focus on the compression of the handcuffs in the back of the police car because she had not previously mentioned in her deposition or her expert report that any injury occurred when Uzun sat down in the back of the car, and she could not, with any degree of medical certainty, apportion causation between the torsion at the doorway and the compression in the car.

Uzun's expert on police procedure, Timothy Williams, Jr., testified that it was not feasible for Valenzuela to double-lock the handcuffs when they were applied to Uzun at his doorway. Williams considered it feasible, however, to double-lock the handcuffs when Uzun was brought to the sidewalk before being placed in the patrol car. He opined that an officer should have

9

checked the handcuffs to make sure they were double-locked as Uzun was being placed in the car.

On March 12, 2024, the jury returned a special verdict finding that Uzun did not prove Valenzuela or King were negligent. Because the jury found the officers did not act negligently, they did not reach the question of whether their negligence was a substantial factor in causing harm. The court entered judgment on April 9, 2024. Uzun filed a motion for new trial, which the court denied. Uzun filed a timely notice of appeal.

## DISCUSSION

### A.    Standard of Review

We review the trial court's rulings on the admissibility of evidence, including expert opinion testimony, under the abuse of discretion standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 717; *Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 988; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599.) Under the abuse of discretion standard, we review the trial court's factual findings for substantial evidence and legal conclusions de novo, but we will not reverse the trial court's application of the law to the facts unless arbitrary and capricious. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) The party challenging the trial court's evidentiary rulings must demonstrate both an abuse of discretion and a resulting miscarriage of justice. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

We review the jury's verdict under the substantial evidence standard. (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 906.) In examining the record, we consider the evidence in the light most favorable to the prevailing party. (*Id.* at p. 907.) Substantial evidence is " 'evidence which is reasonable, credible, and of solid value.' [Citation.] The testimony of a single person is substantial evidence." (*King v. U.S. Bank National Assn.* (2020) 53 Cal.App.5th 675, 699–700.) We do not weigh disputes in the evidence, evaluate the credibility of witnesses, or indulge in inferences contrary to the findings of the trier-of-fact. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) "As in all substantial evidence challenges, the appellate court's power of review commences and ceases with the location of any substantial evidence, contradicted or uncontradicted, which will support the determination." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1239.)

The granting of a new trial is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent a clear and unmistakable showing of abuse of discretion. (*Weathers v. Kaiser Found. Hosps.* (1971) 5 Cal.3d 98, 109.)

## B.    Evidentiary Rulings

Uzun contends the trial court abused its discretion with respect to several evidentiary rulings.

11

### 1. Nature and Origin of Report

Uzun contends the trial court abused its discretion by admitting evidence that the officers responded to a report of domestic violence originating at a hospital because it was unduly prejudicial.  We conclude, however, that the trial court's ruling fell squarely within its discretion.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)[1]

"Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent.  The ability to do so is what makes evidence relevant.  The code speaks in terms of *undue* prejudice.  Unless the dangers of undue prejudice, confusion, or time consumption " 'substantially outweigh' " the probative value of relevant evidence, a section 352 objection should fail.  [Citation.]  " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]"  [Citation.]  [¶]  The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.'

---

[1] All further statutory references are to the Evidence Code unless otherwise stated.

[Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 438–439.)

Uzun was required to prove that the officers had a duty to use due care, one or both officers breached that duty, and the breach was a substantial factor in causing harm to Uzun. (See, i.e., *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629.) "The reasonableness of an officer's conduct is determined in light of the totality of circumstances." (*Ibid.*)

The nature of the report that brought the officers to the house to arrest Uzun was highly relevant to assess whether the officers' actions were reasonable based on their safety concerns. The evidence showed domestic violence calls present one of the highest risk situations for police officers. The origin of the report from a hospital provided information about the credibility and immediacy of the threat that officers might face at the home. The nature and location of the report were not unduly prejudicial to the plaintiff, considering the evidence was indispensable for the defendants to explain their actions in light of the circumstances that they knew at the time. In addition, the plaintiff was able to screen jurors during the selection process for bias based on the nature of the case. The jury viewed body-camera videos of the

13

interaction between Uzun and the officers to assess for themselves whether the officer's actions were reasonable, in light of Uzun's actual behavior, the circumstances known to the officers, and their training. No abuse of discretion has been shown as to the admission of evidence about the nature and origin of the call.

### 2. Outcome of Criminal Action

Uzun contends the trial court abused its discretion by excluding evidence that the criminal charges against him were dismissed with no conviction. We conclude, however, that the trial court's exclusion of the outcome of the criminal matter fell within the court's discretion. The result of the criminal case had no bearing on whether the officers acted reasonably on the evening of the arrest under the totality of the circumstances known to them at the time. Issues related to the criminal case, including the manner in which it was resolved, risked confusing the jury as to the issues in the negligence case. The trial court made its evidentiary ruling after carefully weighing the opposing concerns. We find no abuse of the trial court's discretion.

Uzun contends that in ruling to exclude evidence about the outcome of the criminal matter, the trial court misinterpreted Penal Code sections 851.91 and 851.92. Penal Code section 851.91, subdivision (a), allows a person who has suffered an arrest that did not result in a conviction to have the arrest records sealed in accordance with the procedures of Penal Code section 851.92. Uzun has not explained, however, how the trial court's interpretation the statute is relevant. Regardless of whether the records are sealed or not, all evidence of the outcome

14

of the criminal case was excluded from the negligence action because it was not relevant to whether the officers acted reasonably on the date that Uzun was handcuffed. No abuse of discretion has been shown.

### 3. Rulings Related to Causation

Uzun contends the trial court erred by excluding Chun's deposition testimony and Young's expert testimony. In both instances, however, the excluded evidence was pertinent to the issue of causation. The jury found the officers were not negligent, never reaching the issue of causation. Even if it were an abuse of discretion to exclude the evidence at issue, Uzun has not shown that he was prejudiced by the exclusion of causation evidence when the jury never reached the issue of causation.

## C.  Substantial Evidence

Uzun contends the jury's finding that King and Valenzuela were not negligent is not supported by substantial evidence because the evidence showed it was feasible for the officers to have double-locked the handcuffs at some point between walking Uzun to the sidewalk and placing him in the vehicle. We conclude the jury's finding is supported by substantial evidence.

The jury was instructed, "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or failing to act. A person is negligent if that person does something that a reasonably careful person . . . would do in the same situation. You must decide how

a reasonably careful person would have acted in Arsenio Valenzuela and Ryan King's situation."

It is undisputed that it was not feasible to double-lock the handcuffs at the time that Valenzuela placed them on Uzun. Afterward, Valenzuela left Uzun in the custody of other officers to get the patrol car to transport Uzun. When Valenzuela returned with the car, he illuminated the back seat so King could search the area and place Uzun in the back seat. Based on the evidence, Valenzuela was not in physical proximity to Uzun during the time that Uzun asserts that Valenzuela should have double-locked the handcuffs.

King, who escorted Uzun to the patrol car, had several immediate safety concerns to address. Uzun had not yet been patted down for weapons, which presented a safety risk to everyone present. King was required to conduct a search incident to arrest to remove and secure Uzun's possessions. The mechanism to double-lock the handcuffs is small, and the environment on the sidewalk was dark, with only streetlights and moonlight for illumination. King was assisting Valenzuela from in front of Uzun when Valenzuela applied the handcuffs. King was under the impression that the handcuffs were double-locked and did not realize they were not.

The other safety concerns that required the officers' attention included the family members waiting outside, who might try to approach and intervene, putting the officers or themselves in danger. Unknown people and dogs inside the house might come out to try to free Uzun. King needed to search the back seat of the patrol car before placing Uzun in the car to make sure there were no possessions left from a prior occupant, including weapons.

16

Police procedures do not require an officer performing a search incident to arrest to check whether the handcuffs are double-locked, nor do they require handcuffs to be double-locked before transporting an arrestee. Uzun had not complained about compression from the handcuffs, but as soon as he cried out in pain, King immediately took action to loosen and double-lock the handcuffs. He followed up by asking Uzun about his wrists during the ride to the station.

We conclude the evidence supports the jury's finding that the officers acted as reasonably careful people would under the totality of the circumstances in light of the information known to each of the officers and the attendant safety concerns.

## D.    Motion for New Trial

Uzun contends the trial court erred by denying his motion for a new trial, but concedes the motion was based on the same assertions of error that are resolved above in favor of the City, King, and Valenzuela. No error has been shown.

## DISPOSITION

The judgment is affirmed.  Respondents Ryan King, Arsenio Valenzuela, and the City of Santa Monica are awarded their costs on appeal.

NOT TO BE PUBLISHED.


                                        MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KUMAR, J.*

---

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.