[Crim. No. 2370. Fifth Dist. Aug. 24, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE LEE BROWN, Defendant and Appellant.

**COUNSEL**

Beeman, Bradley, Brown & Beeman and William L. Beeman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi, Susan Cohn and Rodney Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Willie Lee Brown, a medical doctor, was found guilty by a jury of two counts of violating Welfare and Institutions Code section 14107 (furnishing of false claim or information for services), and his appeal is from the judgment entered thereon. He was originally

indicted upon 30 separate felony counts, 16 of which charged violations of Welfare and Institutions Code section 14107, 2 of which charged violations of Insurance Code section 556 (false or fraudulent insurance claim), 2 of which charged violations of Penal Code section 470 (forgery), and 10 of which charged violations of Penal Code section 487 (grand theft).

The trial commenced on March 4, 1975, and concluded on March 27, 1975, after four days of jury deliberation. In addition to the convictions on the two counts from which this appeal is taken, the jury was unable to agree on seven other counts of violating Welfare and Institutions Code section 14107. Regarding the balance of the counts, the court granted a motion for judgment of acquittal (Pen. Code, § 1118.1) at the conclusion of presentation of all the evidence as to 13 of the counts (having denied a similar motion at the close of the prosecution's case) and the jury acquitted the appellant as to the 8 remaining counts.

The counts upon which appellant was convicted or for which a mistrial was declared involved allegedly fraudulent claims which appellant submitted to the California Blue Shield and the Pacific Mutual Life Insurance Company for medical services claimed to have been rendered by appellant to various Medi-Cal patients.

On this appeal Dr. Brown urges that the trial court abused its discretion in failing to grant his motion for a new trial based upon jury misconduct, that the trial court committed prejudicial error in denying his motion for a judgment of acquittal as to 13 counts at the close of the prosecution's case, and that his convictions on the 2 counts of violating Welfare and Institutions Code section 14107 are not supported by the evidence.

We reverse the convictions because of jury misconduct and therefore need not reach or decide the other issues raised.

In support of his motion for a new trial based upon jury misconduct,[1] appellant filed several statements of jurors made under penalty of

---

[1] Penal Code section 1181, subdivision 3, provides in relevant part:

"When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

". . . . . . . . . . . . . . . . . .

"3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented; . . ."

perjury. The only juror declaration having any significant bearing upon this issue is that of Winnifred Winters,[2] which was signed on April 27, 1975, and provides in pertinent part:

"During the course of the trial on Friday, March 7, 1975, or Tuesday, March 11, 1975, in the early morning before court had commenced and before any of the other jurors had arrived, MR. HENRY E. NACHTIGAL, a fellow juror, and I were sitting out in front of the courtroom on a bench. At that time, MR. NACHTIGAL told me in reference to Dr. Brown, 'He is guilty.' 'There is no doubt about it.' Then he moved his hand in an abrupt jester [sic] of finality. This occurred before the prosecution had completed its case.

". . . . . . . . . . . . . . . . . . . . .

"Further, as to those Counts which we the jury were unable to come to a verdict upon, MR. NACHTIGAL was a hold out for a guilty verdict in each instance and in Count 18 where the vote was 11 to 1 for acquittal, the one hold out for a guilty verdict was HENRY NACHTIGAL. Finally, MR. NACHTIGAL was in favor of holding Dr. Brown guilty on all Counts from the begining [sic] of our deliberations."

No counter affidavit or declaration specifically directed to the declaration of juror Winters was filed by the prosecution. However, on April 16, 1975, 11 days before the statement from juror Winters, the prosecution procured a statement from juror Henry E. Nachtigal which was not sworn to as an affidavit or made under penalty of perjury and therefore does not qualify as an affidavit and could not be considered by the trial court in opposition to the motion.[3]

Juror Winters' declaration therefore stands uncontradicted on the record.

---

[2]This declaration is clearly admissible to impeach the verdict under the express provisions of Evidence Code section 1150. (See also *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 350-351 [78 Cal.Rptr. 196, 455 P.2d 132].)

[3]In any event the statement does not refute that part of juror Winters' declaration pertaining to juror Nachtigal's prejudgment of the case. The statement in relevant part sets forth:

"I was not coerced, or pressured by any jurors to cast a vote that was other than the vote I felt fair & just. My voting reflected my true feelings & opinion on the case.

". . . . . . . . . . . . . . . . . . . . .

"The main confusion the jury seemed to have was over things like—'beyond a reasonable doubt' and why should this doctor be punished for these things when all doctors do it."

During the voir dire examination court and counsel asked the jurors, including juror Nachtigal, several times whether they could keep open minds until they had heard all the evidence, to which affirmative answers were received. The admonition and query from the trial judge included this statement: "It is elemental that jurors must keep an open mind until they have heard all of the case, and I've already indicated to you that the last thing that you're going to hear will be my instructions of law; that means that you have to have an open mind until you are actually told to begin your deliberations. Some people just don't have the patience to do that. Do you believe that you can keep an open mind, wait until you have heard all of the case before you start coming to your conclusions?"

Prior to a recess the judge also instructed: "Jurors are not to discuss the case among themselves; they are not to discuss the case with anyone else; you are not to form or express any opinions. . . . I think it's extremely important there cannot be a fair trial if jurors become contaminated by giving views or opinions among themselves or with anyone else during the course of the trial; and this is a Court order; and it's a very serious Court order; and it means that you can't discuss this with any other juror. When I say 'this case', it means anything that's remotely connected with this case or this kind of case. You are not to discuss it with anyone else; you're not to express or form any opinions as to any of the matters that you feel may be involved until you've heard all the case, and this also is important."

 It is manifest that the statement of juror Nachtigal made during the first few days of trial and long before the prosecution had rested its case on March 13, 1975, indicates that he in fact prejudged the case by expressing a clear opinion of guilt before he had heard all the evidence, and that such a statement was in violation of the court's instructions and constituted serious misconduct. (*Clemens* v. *Regents of University of California* (1971) 20 Cal.App.3d 356, 361 [97 Cal.Rptr. 589]; *Deward* v. *Clough* (1966) 245 Cal.App.2d 439, 444 [54 Cal.Rptr. 68].)

In *Deward* an uncontradicted affidavit showed that during the last day of the trial a juror made a statement to two or three other jurors to the effect that: " ' "I don't see why they don't open up the jury room now. We could bring in a verdict already." . . .' " The jurors present all laughed. (245 Cal.App.2d at p. 443.) The court stressed the fact that the above incident took place before the completion of oral argument and before the jury had been instructed. Despite the fact that the jury voted 11 to 1 for the defense after only an hour, the court, after a detailed

review of the record, nonetheless found the misconduct prejudicial and reversed. In doing so the court said: "In both the federal courts (by U.S. Const., Amend. VII) and in the state courts of California (Cal. Const., art. I, § 7) the right to a trial by jury in an action such as this is jurisdictional. [Citation.] And 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury. . . .' [Citation.] The guarantee is to *12* impartial jurors. This does not mean that every insignificant infringement of the rules by a juror calls for a mistrial or a new trial." (*Deward* v. *Clough, supra,* 245 Cal.App.2d at p. 444.) (See *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132].)

Since the declaration of juror Winters describing the misconduct of juror Nachtigal stands uncontradicted, there was no factual resolution of conflicting affidavits to be made by the court. We are therefore not concerned with the rule that factual determinations by the trial court based upon conflicting affidavits are conclusive on appeal. (See *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at p. 108.) Accordingly, the only question remaining is the prejudicial effect of the misconduct.

■ Some cases have treated the issue of the prejudicial effect of jury misconduct as being a question of fact for the trial court and have held that a finding of no prejudice implied in the denial of a new trial should not be set aside unless there is no evidence to sustain it. (*People* v. *Aeschlimann* (1972) 28 Cal.App.3d 460, 471-472 [104 Cal.Rptr. 689]; *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 430 [82 Cal.Rptr. 1].) We are of the view, however, that the more enlightened and appropriate rule is that since jury misconduct challenges the fundamental rights to an unprejudiced jury and the fairness of the trial proceedings, this issue is an independent appellate issue to be adjudicated by this court based upon the whole record. (*Clemens* v. *Regents of University of California, supra,* 20 Cal.App.3d at p. 366; *Deward* v. *Clough, supra,* 245 Cal.App.2d at p. 445; *Noll* v. *Lee* (1963) 221 Cal.App.2d 81, 86-94 [34 Cal.Rptr. 223]. See also *Wilkinson* v. *Southern Pacific Co.* (1964) 224 Cal.App.2d 478, 483 [36 Cal.Rptr. 689].) The court in *Deward* succinctly stated the principle: "While it is true that many California cases have stated the trial court exercises a discretion in weighing the prejudicial effect of error (e.g., misconduct of a juror) and that its action will be disturbed only for an abuse of discretion, a more accurate statement, as we had occasion to observe in *Wilkinson* v. *Southern Pacific Co.,* 224 Cal.App.2d 478, at page 483 [36 Cal.Rptr. 689],

is that article VI, section 4½, of the California Constitution 'imposes on the appellate court a direct obligation to review the entire record . . . to determine *independently* whether error has prejudiced the appellant.' (Italics supplied.)" (245 Cal.App.2d at p. 445.)

This view is bolstered by the provisions of Evidence Code section 1150 which requires that the effect of the misconduct can only be judged in terms of objective facts or events surrounding the misconduct itself. (See *People* v. *Hutchinson, supra,* 71 Cal.2d at pp. 350-351.) This court is in as good a position as the trial court to make this judgment where there are no factual conflicts regarding the misconduct itself.

▪ In approaching the issue of prejudice, it first must be noted that a unanimous verdict is required in a criminal case. Thus, the disqualification of a single juror could have resulted in a different verdict on any of the counts.

It is also significant that the firm and fixed statement of guilt was made by the offending juror at a time when two and one-half days of the prosecution's case remained to be presented, before any of the defense case was presented and before the arguments of counsel or the instructions on the applicable law. Thus, he had clearly decided the case early in the proceedings independent of the evidence and the law.

Respondents argue that the fact the offending juror voted for acquittal on eight of the charges shows his mind had not been made up. This is pure speculation. The conclusion argued by respondent is not compelled, especially in view of juror Winters' declaration, substantiated by the manner in which the offending juror voted in favor of holding appellant guilty on all counts from the beginning of the deliberations. What negotiations or events occurred to cause the juror to vote for acquittal on those counts and the motivation and reasons therefor are, of course, beyond the competence of affidavits to show or this court to consider on the issue of jury misconduct. (See Evid. Code, § 1150.)

Our review of the entire record requires the conclusion that appellant was deprived of his constitutional right to a fair trial by 12 impartial jurors and that the denial of a new trial on this ground was prejudicial error.

Appellant also argues that the declarations demonstrate that juror Nachtigal concealed his bias and disqualification by giving false answers on voir dire. (See *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at p. 110; *People* ex rel. *Dept. Pub. Wks.* v. *Curtis* (1967) 255 Cal.App.2d 378, 388-389 [63 Cal.Rptr. 138].)

However, we have concluded that the contents of the declarations do not conclusively and directly prove concealment of bias or prejudice *at the time* of the voir dire and that such a conclusion can only be derived by inference from circumstantial evidence. Thus, the trial court was presented with a situation requiring it to arrive at a conclusion based upon a record from which conflicting inferences could be drawn. Under these circumstances, we are bound by the lower court's implied factual finding that Mr. Nachtigal did not have such bias or prejudice at the time of the voir dire. (*Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at p. 108; *Shipley* v. *Permanente Hospital* (1954) 127 Cal.App.2d 417 [274 P.2d 53, 48 A.L.R.2d 964].)

The judgment is reversed.

Gargano, J., and Franson, J., concurred.