Filed 11/3/14  P. v. Smith CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B252507 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA384019) |
| v. | |
| ELMO SMITH, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Alan C. Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Senior Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Elmo Smith appeals from the judgment following his conviction for second degree robbery. We affirm.

## FACTS AND PROCEEDINGS

About 5:50 p.m. in the morning on April 28, 2011, victim D'Alan Horton was walking on Vermont Avenue on his way to school. Horton was carrying his cellphone in his hand. Horton walked past appellant Elmo Smith and a second man. Appellant came up from behind Horton, tapped him on the shoulder, and asked if he could use Horton's phone. Horton said no. Appellant tried to grab Horton's phone. As they struggled over the phone, appellant told the second man who was standing about ten feet away to "get the gun, get the gun." Appellant then managed to free the phone from Horton's grasp, jumped on a silver bike near the second man, and rode away. Horton estimated that 45 to 50 seconds passed between the time appellant tapped Horton's shoulder and when appellant fled.

Horton walked to a nearby Laundromat from where he called the police. Officers arrived. Horton told them his assailant was over 40 years old, was wearing glasses, and had marks or scars on his face and a mustache and goatee. The next morning at about 5 o'clock, police stopped appellant, who generally matched Horton's description, as appellant rode a bike that looked like the bike ridden by Horton's assailant. Police arrested appellant because he was riding the bike in the dark without lights. On May 2, 2011, four days after the robbery, Horton selected appellant from a six-pack of photographs.

The People charged appellant by information with robbing Horton. The information further alleged appellant had suffered prior strikes under the Three Strikes law and had served prior prison terms. At trial, evidence of Horton's six-pack identification was introduced. The jury convicted appellant of second degree robbery, and the court found true the special allegations, but at the People's request, the court

dismissed the prior prison term allegations.  The court sentenced appellant under the Three Strikes law to state prison for 25 years to life.  This appeal followed.

**DISCUSSION**

1.  <u>Defense Counsel Not Ineffective</u>

During its deliberations, the jury submitted a set of three written questions to the court, which the court answered after conferring with the prosecutor and defense counsel.

● The jury's first question was:  "Whether a defendant in a criminal case has a constitutional right for a six pack photo lineup to be used by the victim for identification?"

The court answered:  "The six pack photo identification lineup was received into evidence.  Six pack lineups are a constitutionally permissible way of identifying defendants."

● The jury's second question was:  "As a matter of law does the 'six pack' in which the defendant was identified meet the applicable legal and constitutional requirements?"

The court answered:  "Yes.  There is no legal issue as to its admissibility as evidence."

● The jury's third question was:  "Must we follow your instructions on this question as a matter of law?"

The court answered:  "Yes.  It would be misconduct and a violation of your oath to disobey my instructions."

Defense counsel did not object to any of the court's answers.  Appellant contends the court's third answer was inadequate.  According to appellant, defense counsel should have asked the court to direct the jury's attention to the court's previous instruction with CALCRIM No. 315 about eyewitness identification.  CALCRIM No. 315 states in part:

3

"You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following questions: [¶] Did the witness know or have contact with the defendant before the event? [¶] How well could the witness see the perpetrator? [¶] What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation? [¶] How closely was the witness paying attention? [¶] Was the witness under stress when he or she made the observation? [¶] Did the witness give a description and how does that description compare to the defendant? [¶] How much time passed between the event and the time when the witness identified the defendant? [¶] Was the witness asked to pick the perpetrator out of a group? [¶] Did the witness ever fail to identify the defendant? [¶] Did the witness ever change his or her mind about the identification? [¶] Are the witness and the defendant of different races? [¶] Was the witness able to identify other participants in the crime? [¶] Was the witness able to identify the defendant in a photographic or physical lineup? [¶] Were there any other circumstances affecting the witness's ability to make an accurate identification? . . . ."

Appellant suggests the court's answer to the third question should have been along the lines of something like, "While you must follow my instructions on this subject as a matter of law, it is up to you to determine the validity of the eyewitness identification pursuant to CALCRIM No. 315." By not requesting that the court's third answer incorporate CALCRIM No. 315, appellant contends defense counsel rendered ineffective assistance. We disagree.

One element of ineffective assistance of counsel is the attorney's performance and decisions fell below a competent attorney's standard of care. (*In re Fields* (1990) 51 Cal.3d 1063, 1069-1070; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) If the

4

record is silent about the reasons for a decision by counsel, then we must presume the decision did not fall below the standard of care unless no sound reason for the decision could possibly exist. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *People v. Loza* (2012) 207 Cal.App.4th 332, 351.)

Here, there were several possible reasons defense counsel did not ask the court to direct the jury's attention to the court's earlier instruction with CALCRIM No. 315. First, the court's answer to question 3 correctly stated the law: jurors commit misconduct if they do not follow the court's instructions. (*People v. Engelman* (2002) 28 Cal.4th 436, 445.)

Second, defense counsel may have believed that CALCRIM No. 315 did not respond to the jury's question. The third question asked whether the jury must abide by the court's answers to the jury's two previous questions, which concerned the legality and constitutionality of photographic six-packs. CALCRIM No. 315, in contrast, addresses factors the jury ought to consider in determining the reliability of eyewitness identification. The reliability of eyewitness identification and constitutionality of photographic six-packs are different, albeit related, topics.

Third, the trial court had already instructed the jury with CALCRIM No. 315. Defense counsel may have concluded that emphasizing that instruction did not help appellant. Appellant asserts the jury's questions revealed that the jury had "obvious six-pack identification concerns."[1] Some factors identified by CALCRIM No. 315 as affecting reliability of eyewitness identification helped appellant's defense of mistaken identity. For example, Horton was under stress during the robbery, it was dark outside, and Horton's interaction with the robber was brief, lasting less than one minute. Other factors, however, strengthened the People's case by bolstering the reliability of Horton's identification of appellant. For example, Horton was face to face with his assailant

---

[1]     Appellant had moved to exclude the six-pack from evidence on the grounds that the criteria police investigators used to select the photographs for the six-pack made appellant's photo stick out. The court denied appellant's motion. Appellant does not make a separate argument that the court erred in denying that motion.

5

during the robbery: Horton's description of the robber to the police matched appellant; Horton identified appellant within days of the robbery; Horton never failed to identify appellant; Horton's identification of appellant was not cross-racial; and Horton picked appellant out of a group.

Because we can deduce several possible reasons defense counsel did not request that the court re-direct the jury's attention to CALCRIM No. 315 in answering the jury's third question, we must find, based on the silent record of the actual reasons for counsel's decision, that counsel's representation of appellant did not fall below a competent attorney's standard of care. (*People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266-267; *People v. Loza, supra,* 207 Cal.App.4th at p. 351.) Thus, appellant's claim of ineffective assistance of counsel fails.

2.     Failure to Dismiss Strikes Not Abuse of Discretion

The court found true that appellant had suffered three strikes under the "Three Strikes" law in 1987 and 1988. Noting that his strikes occurred in the late 1980s and thus were remote in time, appellant moved under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, for the court to dismiss at least two of those strikes. The court denied appellant's motion. The court thereafter sentenced appellant to state prison for 25 years to life for having three strikes under the Three Strikes law.

Appellant contends the court abused its discretion in refusing to dismiss at least two of his strikes. (*People v. Carmony* (2004) 33 Cal.4th 367, 376; *People v. Garcia* (1999) 20 Cal.4th 490, 503.) We disagree. A trial court may dismiss a defendant's strike if the defendant's circumstances and his current offense put the defendant outside the spirit of the Three Strikes law. (*Carmony*, at p. 377; *People v. Williams* (1998) 17 Cal.4th 148, 161.) Here, the trial court did not find that appellant fell outside the spirit of the Three Strikes law. The court acknowledged that appellant's strikes from the 1980s were "very old." Remoteness in time is a factor a court may consider in deciding whether to dismiss strikes, but remoteness is not by itself sufficient to dismiss a strike if

6

the defendant continued to reoffend between the time of the remote convictions and his current offense. (*People v. Pearson* (2008) 165 Cal.App.4th 740, 749; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) Following appellant's strikes in 1987 and 1988, he has not led a crime-free life. He was convicted of being under the influence of a controlled substance in 1993; misdemeanor battery in 1996; petty theft with a prior in 1997 and 2000; taking a vehicle without the owner's consent in 2002; and twice driving with a suspended license in 2010. Indeed, he was on probation when he robbed Horton Moreover, appellant's strikes in 1987 and 1988 were for robbery, the same offense as his current conviction. The court noted that if appellant's current offense had involved declining seriousness since his 1987 and 1988 robbery convictions, the court might have ruled differently on appellant's motion to dismiss the prior strikes. But because appellant's current offense involved the same crime as his remote convictions, the court concluded that dismissing those strikes was unwarranted. The court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.

7